UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

In re MBIA INC. SECURITIES LITIGATION :    Civil Action No. 05-CV-03514(LLS)
                                     :

———————————————————— :    **ECF Case**
                                     :

This Document Relates To:              :    CLASS ACTION
                                     :

      ALL ACTIONS.                       :    SETTLEMENT AGREEMENT

———————————————————— x

This Settlement Agreement dated August 24, 2012 (the "Settlement Agreement"), submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure and Rule 408 of the Federal Rules of Evidence, embodies a settlement (the "Settlement") made and entered into by and among the following parties (the "Settling Parties"): (i) Southwest Carpenters Pension Trust and the City of Pontiac General Employees' Retirement System ("Lead Plaintiffs"), on behalf of themselves and each of the members of the Class, as defined herein, on the one hand, and (ii) MBIA Inc. ("MBIA"), Gary Dunton, Neil G. Budnick, Joseph W. Brown, Douglas C. Hamilton, Nicholas Ferreri, and Richard L. Weill (collectively, "Defendants") on the other hand, by and through their undersigned counsel of record in the above-referenced consolidated class actions (the "Action"), pending in the United States District Court for the Southern District of New York (the "Court"). The Settlement Agreement is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, as defined in ¶1.19 below, upon and subject to the terms and conditions hereof and subject to the approval of the Court. Throughout this Settlement Agreement, all capitalized terms used, but not immediately defined, have the meanings given to them in Part IV.1, below.

## I.    THE LITIGATION

On and after April 5, 2005, class action complaints were filed against MBIA and others alleging violations of federal securities laws. In those actions, plaintiffs alleged that MBIA had materially misstated its financial results by engaging in improper accounting practices. On July 25, 2005, the Court consolidated the pending actions and appointed Southwest Carpenters Pension Trust and the City of Pontiac General Employees' Retirement System as Lead Plaintiffs and Robbins Geller Rudman & Dowd LLP as lead counsel ("Lead Counsel"). Lead Plaintiffs filed their Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws (the "First

- 1 -

Complaint") on October 3, 2005, and Defendants filed a motion to dismiss the First Complaint on July 17, 2006. Lead Plaintiffs filed their opposition on October 3, 2006, and Defendants filed their reply on November 17, 2006. On February 13, 2007, the Court issued an Opinion and Order dismissing the First Complaint on statute of limitations grounds.

On March 14, 2007, Lead Plaintiffs filed a Notice of Appeal to the United States Court of Appeals for the Second Circuit. Lead Plaintiffs filed their opening brief on August 3, 2007, and Defendants filed their responding brief on September 3, 2007. Lead Plaintiffs filed their reply brief on September 17, 2007. The appeal was argued on October 31, 2008. On November 17, 2008, the Second Circuit issued an order affirming the dismissal but, interpreting it to be without prejudice, remanded the case to the Court for further proceedings.

At a status conference on December 12, 2008, the Court directed Lead Plaintiffs to amend their complaint to include allegations addressing the statute of limitations. Lead Plaintiffs filed their Second Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws (the "Second Complaint") on February 18, 2009. Defendants filed a motion to dismiss the Second Complaint on April 17, 2009. Lead Plaintiffs filed their opposition brief on June 30, 2009, and Defendants filed their reply on August 31, 2009. On September 25, 2009, the Court issued an opinion and order dismissing the Second Complaint on statute of limitations grounds.

On November 2, 2009, Lead Plaintiffs filed a Notice of Appeal. On March 2, 2010, Lead Plaintiffs filed a motion asking the Second Circuit to extend the briefing schedule of their appeal pending the United States Supreme Court's decision in *Merck & Co., Inc. v. Reynolds*, No. 08-905. That motion was denied, and Lead Plaintiffs filed their opening brief on April 16, 2010. Defendants filed their brief on June 11, 2010, and Lead Plaintiffs filed their reply brief on June 28, 2010. On June 25, 2010, the Second Circuit granted Lead Plaintiffs' motion to dismiss, with prejudice, their

- 2 -

claims against Julliette S. Tehrani and David H. Elliott.  The appeal was argued on November 1, 2010.  On February 28, 2011, the Second Circuit vacated the judgment of dismissal and remanded the Action to the Court for reconsideration in light of the Supreme Court's decision in *Merck & Co., Inc.  v. Reynolds*, 130 S. Ct. 1784 (2010).

Defendants filed their motion to dismiss the Second Complaint on June 10, 2011.  After the parties advised the Court that they were seeking to resolve the Action through a mediator, Defendants withdrew that motion, without prejudice, at the direction of the Court.

In an effort to resolve the Action through good-faith settlement negotiations, the parties attended a mediation on May 10, 2012 before Jed Melnick, who has extensive experience in mediating complex litigations and securities actions.   Following extensive discussions and negotiations led by the mediator, the parties reached an oral agreement on the principal terms of a settlement.

## II.    CLAIMS OF LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT

Lead Plaintiffs allege that MBIA entered reinsurance agreements with certain reinsurers (the "Reinsurers") to mitigate losses stemming from the bankruptcy of the Allegheny Health Education and Research Foundation ("AHERF"), and that Defendants entered into secret oral agreements with the Reinsurers under which MBIA was to take back the entire liability on the AHERF loss by ceding to the Reinsurers only its highest quality insurance policies, which would give rise to little or no risk. Lead Plaintiffs allege that, during the Class Period, Defendants concealed the existence of the secret oral agreements with the Reinsurers, and that MBIA improperly accounted for the funds received from the Reinsurers.  Lead Plaintiffs further allege that, during the Class Period, MBIA issued false financial statements that misstated its financial performance due to the alleged improper accounting,

- 3 -

and that as the truth about the reinsurance agreements was disclosed over time, the price of MBIA securities declined, causing Lead Plaintiffs and the Class to suffer losses.

Lead Plaintiffs and Lead Counsel believe that the claims asserted in the Action have merit. However, Lead Plaintiffs and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants through discovery, trial, and appeal. Lead Plaintiffs and Lead Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action, as well as the risks posed by the difficulties and delays inherent in such litigation. Lead Plaintiffs and Lead Counsel also are aware of the defenses to the securities law violations asserted in the Action, as well as the procedural posture of the case. Lead Plaintiffs and Lead Counsel believe that the Settlement set forth in this Settlement Agreement confers substantial benefits upon the Class in light of all the circumstances. Based on their evaluation, Lead Plaintiffs and Lead Counsel have determined that the Settlement is in the best interests of Lead Plaintiffs and the Class.

## III.   DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny all allegations of any wrongdoing or liability against them whatsoever arising out of the conduct, statements, acts or omissions alleged in the Action, or that could have been alleged in the Action. Defendants also have denied and continue to deny, *inter alia*, the allegations that they made any material misstatements or omissions during the Class Period; that any member of the Class has suffered damages or was harmed by the conduct that has been alleged by Lead Plaintiffs, or that could be alleged by Lead Plaintiffs; that the price of MBIA stock was artificially inflated by reason of the alleged misrepresentations, omissions, or otherwise; or that Defendants knew or were reckless with respect to the alleged misconduct. In

- 4 -

718797_3

addition, Defendants believe that they have meritorious defenses to all claims alleged in the Action, including a defense based on the statute of repose.

Nonetheless, taking into account the uncertainty, risks, and costs inherent in any litigation, especially in complex cases, Defendants have concluded that further conduct of the Action could be protracted, burdensome, and expensive. Defendants have, therefore, determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. As set forth in ¶¶8.2 and 8.3 below, this Settlement Agreement and all related documents shall not be construed as or be deemed evidence of an admission or concession by Defendants with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in Defendants' defenses.

## IV.   TERMS OF THE SETTLEMENT AGREEMENT

NOW, THEREFORE, IT IS HEREBY AGREED by and among Lead Plaintiffs (for themselves and the members of the Class) on the one hand, and Defendants on the other hand, by and through their undersigned counsel of record, that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Settling Parties from the Settlement, the Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Settlement Agreement, as follows.

### 1.   Definitions

As used in the Settlement Agreement the following terms have the meanings specified below:

718797_3

1.1     "Authorized Claimant" means any member of the Class who submits a timely and valid Proof of Claim and Release form and whose claim for recovery has been allowed pursuant to the terms of the Settlement Agreement.

1.2     "Claims Administrator" means the firm of Gilardi & Co. LLC.

1.3     "Class" means all Persons who purchased or otherwise acquired MBIA common stock from August 5, 2003 through March 30, 2005, inclusive. Excluded from the Class are:

(a)     Persons or entities who submit valid and timely requests for exclusion from the Class in accordance with the requirements set forth in the Notice of Pendency of Proposed Settlement of Class Action to be sent to Class Members in connection with the Settlement; and

(b)     Defendants, members of the immediate family of any such Defendant, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has or had a controlling interest during the Class Period, the officers and directors of MBIA during the Class Period, and legal representatives, agents, executors, heirs, successors or assigns of any such excluded Person.

1.4     "Class Member" means a Person who falls within the definition of the Class as set forth in ¶1.3 above.

1.5     "Class Period" means the period August 5, 2003 through March 30, 2005, inclusive.

1.6     "Defendants" has the meaning given it in the first paragraph above.

1.7     "Effective Date" means the first date by which all of the events and conditions specified in ¶7.1 below have been met and have occurred.

1.8     "Escrow Agent" means Robbins Geller Rudman & Dowd LLP or its successor(s).

1.9     "Exhibits" means the following documents attached to the Settlement Agreement: the "[Proposed] Order Preliminarily Approving Settlement and Providing for Notice" (Exhibit A); the

- 6 -

"Notice of Pendency of Proposed Settlement of Class Action" (Exhibit A-1); the "Proof of Claim and Release" (Exhibit A-2); the "Summary Notice" (Exhibit A-3); and the "[Proposed] Final Judgment and Order of Dismissal with Prejudice" (Exhibit B).

    1.10    "Final" means the time when the last of the following shall have occurred with respect to the Judgment: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, the determination of that motion or appeal in such a manner as to permit the consummation of the Settlement in accordance with the terms and conditions of this Settlement Agreement.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement or any request for en banc review or reconsideration, any proceedings on remand, and any proceedings arising out of any subsequent appeal or appeals following proceedings on remand, but shall not include any appeal which concerns only the issue of attorneys' fees and expenses or any Plan of Distribution of the Settlement Fund.

    1.11    "Individual Defendants" means Gary Dunton, Neil G. Budnick, Joseph W. Brown, Douglas C. Hamilton, Nicholas Ferreri, and Richard L. Weill.

    1.12    "Judgment" means the final judgment and order of dismissal with prejudice to be rendered by the Court upon approval of the Settlement, substantially in the form attached hereto as Exhibit B, subject to any amendment to the form implemented by the Court.

    1.13    "Lead Counsel" means Robbins Geller Rudman & Dowd LLP or its successor(s).

    1.14    "Lead Plaintiffs" means Southwest Carpenters Pension Trust and the City of Pontiac General Employees' Retirement System.

1.15   "Net Settlement Fund" means the portion of the Settlement Fund that shall be distributed to Authorized Claimants as allowed by the Court.

1.16   "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any other business or legal entity, and any spouses, heirs, predecessors, successors, representatives, or assignees of any of the foregoing.

1.17   "Plaintiffs' Counsel" means any counsel who appeared as counsel for any plaintiff in the Action.

1.18   "Plan of Distribution" means a plan or formula of allocation of the Net Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of those expenses allowed by the Court for notice and administration of the Settlement, Taxes and Tax Expenses, and such attorneys' fees, costs, expenses, and interest, and other expenses as may be awarded by the Court, all as further defined in the Notice of Pendency of Proposed Settlement of Class Action. Any Plan of Distribution shall not be treated as or deemed to be part of the Settlement Agreement, and the Released Persons shall have no responsibility or liability with respect thereto.

1.19   "Released Claims" means all claims, debts, demands, rights or causes of action or liabilities of any nature or description whatsoever (including, but not limited to, claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liability whatsoever), whether known or unknown (including, but not limited to, "Unknown Claims"), that were asserted or could have been asserted in this Action by Lead Plaintiffs or members of the Class, directly, derivatively, or in any other capacity, against the Released Persons under federal, state, or any other law, including, without limitation, all claims arising out of, or relating to, in whole or in part, (i) the claims or facts and circumstances asserted or that could have been asserted in this

- 8 -

Action, and (ii) the purchase or acquisition of MBIA common stock during the Class Period by Class Members.

1.20    "Released Persons" means each and all of Defendants and each and all of their present or former parents, subsidiaries, affiliates (as defined in 17 C.F.R. §210.1-02(b)), successors and assigns, and each and all of the present or former officers, directors, employees, employers, attorneys, accountants, financial advisors, commercial bank lenders, insurers, reinsurers, investment bankers, representatives, general and limited partners and partnerships, heirs, executors, administrators, successors, affiliates, and assigns of each of them, and each and all members of an Individual Defendant's immediate family, or any trust of which any Defendant is the settlor or which is for the benefit of any Individual Defendant and/or member(s) of his family.

1.21    "Settlement Amount" means Three Million, Seven Hundred and Fifty Thousand United States Dollars (USD $3,750,000.00).

1.22    "Settlement Fund" means the Settlement Amount plus all interest and income earned thereon after payment of the Settlement Amount to the Escrow Agent.

1.23    "Settling Parties" means, collectively, Defendants and Lead Plaintiffs on behalf of themselves and the Class Members.

1.24    "Unknown Claims" means any Released Claims which the Lead Plaintiffs or any Class Members do not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons which, if known by him, her or it, might have affected his, her or its settlement of the Action and release of the Released Persons, or might have affected his, her or its decision not to object to the Settlement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiffs shall have, and each of the Class Members shall be deemed to have and by operation of the Judgment shall have, expressly waived to the fullest

- 9 -

extent permitted by law the provisions, rights, and benefits of California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Lead Plaintiffs shall have, and each of the Class Members shall be deemed to have and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542. Lead Plaintiffs and Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiffs shall expressly have, and each Class Member upon the Effective Date shall be deemed to have and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

718797_3

2.    **The Settlement**

a.    **The Settlement Fund**

2.1     On behalf of Defendants, MBIA or its designee(s) shall cause Three Million, Seven Hundred and Fifty Thousand United States Dollars (USD $3,750,000.00) in cash to be transferred by means of check(s), money order(s), or wire transfer(s) to the Escrow Agent within twenty (20) calendar days following entry of an order preliminarily approving the Settlement.  The Escrow Agent, without further approval of Defendants or the Court, may pay from the Settlement Fund up to $250,000 in notice or administrative costs associated with the administration of the Settlement, including, without limitation: the cost of identifying and locating members of the Class, mailing the Notice and Proof of Claim and Release form and publishing notice (such amount shall include, without limitation, the actual costs of publication, printing and mailing the Notice, and reimbursement to nominee owners for forwarding notice to their beneficial owners), soliciting Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms, and paying bank fees and costs related to the escrow, if any, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims. Prior to the Effective Date, any notice or administrative costs exceeding $250,000 shall require notice to and agreement from Defendants, through Defendants' counsel, which agreement shall not be unreasonably refused.  Under no circumstances will MBIA or its designee(s) be required to pay to the Escrow Agent more than the Settlement Amount, and under no circumstances will any of the Individual Defendants be required to make any payments towards the Settlement.

- 11 -

### b.    The Escrow Agent

2.2    The Escrow Agent shall invest the amounts transferred to it pursuant to ¶2.1 above in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances of less than $100,000 may be invested in money market mutual funds comprised exclusively of investments secured by the full faith and credit of the United States.  In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in a non-interest bearing account that is fully insured by the FDIC. So long as the Settlement Fund is invested in accordance with this ¶2.2, all risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund.

2.3    The Escrow Agent shall be instructed not to disburse the Settlement Fund except (a) as provided in the Settlement Agreement, (b) by an order of the Court, or (c) with the written agreement of counsel for the Settling Parties.

2.4    Subject to further order(s) and/or directions as may be made by the Court, or as provided in the Settlement Agreement, the Escrow Agent is authorized to enter into such transactions as are consistent with the terms of the Settlement Agreement.  The Defendants shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.5    All funds held by the Escrow Agent shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed or returned to the person(s) paying the same pursuant to the Settlement Agreement and/or further order(s) of the Court.

718797_3

### c.    Taxes

2.6    Qualified Settlement Fund

(a)    The Settling Parties agree to treat the Settlement Fund as being at all times a "Qualified Settlement Fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.6, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)    For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. Lead Counsel shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶2.6(a) hereof) shall be consistent with this ¶2.6 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.6(c) and ¶2.6(d) hereof.

(c)    All (i) Taxes (including any estimated Taxes, interest, or penalties) that become payable or that are incurred with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Settling Parties or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal or state income tax

- 13 -

purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶2.6 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.6) ("Tax Expenses"), shall be paid out of the Settlement Fund.

(d)     The Settling Parties and Released Persons and their counsel shall have no liability or responsibility for Taxes or Tax Expenses. The Settlement Fund shall indemnify and hold each of the Released Persons and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither Defendants nor their counsel are responsible nor shall they have any liability therefor. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.6.

(e)     For the purpose of this ¶2.6, references to the Settlement Fund shall include both the Settlement Fund and any earnings thereon.

**d.     Termination of Settlement**

2.7     In the event that the Settlement Agreement (i) is not approved by the Court, or (ii) is terminated, canceled, or fails to become effective for any reason, including, without limitation, in the event the Judgment is reversed or vacated following any appeal taken therefrom, or (iii) is

- 14 -

successfully collaterally attacked, the Settlement Fund, less expenses actually incurred or due and owing for notice or administrative costs pursuant to ¶2.1 or ¶2.6, shall be paid to the entity that provided the funds.

### 3.      Notice Order and Settlement Hearing

3.1      Promptly after execution of the Settlement Agreement, Lead Counsel shall submit the Settlement Agreement together with the Exhibits to the Court and shall file a motion for the entry of an order (the "Notice Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement, and approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice, substantially in the forms of Exhibits A-1 and A-3 attached hereto.

3.2      Lead Counsel shall request that after notice is given to the Class and a reasonable time period has passed, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Action as set forth herein.  At or after the Settlement Hearing, Lead Counsel also shall request that the Court approve the proposed Plan of Distribution and the Fee and Expense Application.

### 4.      Releases

4.1      Upon the Effective Date, Lead Plaintiffs and each of the Class Members who have not timely opted out of the Class shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged against each of the Released Persons (whether or not such Class Members execute and deliver the Proof of Claim and Release forms) all Released Claims (including any Unknown Claims), as well as any other claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of the Action or the Released Claims.

- 15 -

4.2     Upon the Effective Date, Lead Plaintiffs and each of the Class Members who have not timely opted out of the Class, and their predecessors, successors, agents, representatives, attorneys, and affiliates, and the heirs, executors, administrators, successors, and assigns of each of them, directly or indirectly, individually, derivatively, representatively, or in any other capacity, shall be permanently barred and enjoined from the assertion, institution, maintenance, prosecution, or enforcement against any of the Defendants, or any other Released Persons, in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, of any and all Released Claims (including, without limitation, Unknown Claims), as well as any other claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of the Action or the Released Claims; *provided*, however, that the Released Claims shall not include the obligations set forth in this Settlement Agreement.

4.3     The Proof of Claim and Release form to be executed by Class Members shall release all Released Claims against the Released Persons and shall be substantially in the form of Exhibit A-2 attached hereto.

4.4     Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiffs, each and all of the Class Members, and Plaintiffs' Counsel from all claims (including, without limitation, Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement, or resolution of the Action or the Released Claims; *provided*, however, that the Released Claims shall not include the obligations set forth in this Settlement Agreement..

- 16 -

**5.    Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

5.1    The Claims Administrator, subject to such supervision and direction of the Court as may be necessary or as circumstances may require, (i) shall provide notice of the Settlement to the Class as set forth in ¶3.1 above, subject to any Court modification, (ii) shall administer and calculate the claims submitted by Class Members, and (iii) shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

5.2    Not later than five (5) business days after the Court's preliminary approval of this Settlement Agreement, MBIA will use reasonable efforts to cause its transfer agent to provide to Lead Counsel and/or the Claims Administrator in a computer-readable format, the last known names and addresses of all shareholders of record during the Class Period.  MBIA shall bear its own expense of complying with this ¶5.2.

5.3    Not later than ten (10) calendar days after MBIA's transfer agent providing Lead Counsel and/or the Claims Administrator with the last known names and addresses of all shareholders of record as required by ¶5.2 hereof (the "Notice Date"), Lead Counsel and/or the Claims Administrator will cause to be mailed to all shareholders of record identified by MBIA's transfer agent a form of notice, in the form of Exhibit A-1 attached hereto, and a Proof of Claim and Release form, in the form of Exhibit A-2 attached hereto.  The Notice shall set forth the terms of the Settlement Agreement, including the proposed Plan of Distribution and Lead Counsel's proposed request for attorneys' fees and expenses; the date of the Settlement Hearing; the right to object to the Settlement, or proposed Plan of Distribution, or proposed request for fees and expenses; the right to appear at the Settlement Hearing; and the right to request exclusion from the Class.  The Notice and Proof of Claim and Release form shall be posted on the Claims Administrator's website.  Not later than seven (7) calendar days following the Notice Date, a summary notice, in the form of Exhibit A-

- 17 -

3 attached hereto, will be published once in the national edition of *Investor's Business Daily* and once over the *Business Wire*. The cost of providing such notice shall be paid out of the Settlement Fund. Not later than twenty-one (21) calendar days prior to the Settlement Hearing, Lead Counsel shall serve on Defendants' counsel and file with the Court proof, by affidavit or declaration, of such mailing and publishing.

5.4    The Settlement Fund shall be applied as follows:

(a)    to pay Plaintiffs' Counsel's attorneys' fees and expenses and an award to the Lead Plaintiffs (the "Fee and Expense Award"), if and to the extent awarded by the Court;

(b)    to pay all the costs and expenses reasonably and actually incurred in connection with providing notice, including locating Class Members, soliciting Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms, and paying escrow fees and costs, if any;

(c)    to pay the Taxes and Tax Expenses; and

(d)    to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants in accordance with the Settlement Agreement and the Plan of Distribution.

5.5    Upon the Effective Date and thereafter, and in accordance with the terms of the Settlement Agreement, the Plan of Distribution, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following ¶¶5.6 through 5.18.

5.6    Each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release form postmarked by no later than

- 18 -

ninety (90) calendar days after the Notice Date, or such other time as may be set by the Court (the "Bar Date"), substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release and as are reasonably available to such Person.

5.7     Except as otherwise ordered by the Court, all Class Members who fail to submit a Proof of Claim and Release form by the Bar Date, or such other period as may be ordered by the Court, or who file a Proof of Claim and Release form that is rejected, shall be forever barred from receiving any payments pursuant to the Settlement Agreement and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Settlement Agreement, the releases contained herein, and the Judgment.

5.8     Lead Counsel shall cause the Claims Administrator to calculate the allocation of the Net Settlement Fund of each member of the Class.  Following the Effective Date, Lead Counsel shall cause the Claims Administrator to mail to each Class Member eligible for a distribution of the Net Settlement Fund his, her, or its *pro rata* share.  The cost of these procedures shall be paid out of the Settlement Fund.

5.9     Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator.  Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Proof of Claim and Release forms submitted in the interests of achieving substantial justice.

5.10     For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an "Authorized Claimant," the following conditions shall apply:

(a)     Each Class Member shall be required to submit an executed Proof of Claim and Release form (substantially in the form of Exhibit A-2 attached hereto), supported by such

- 19 -

718797_3

documents as are designated therein, including proof of the Class Member's loss, or such other documents or proof as Lead Counsel, in their discretion, may deem acceptable;

(b)    All Proof of Claim and Release forms must be submitted by the date specified in the Notice unless such period is extended by order of the Court.  Any Class Member who fails to submit a Proof of Claim and Release form by such date shall be forever barred from receiving any payment pursuant to this Settlement Agreement (unless, by order of the Court, a later submitted Proof of Claim and Release form by such Class Member is approved), and shall in all other respects be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action against the Released Persons concerning the Released Claims.  A Proof of Claim and Release form shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by First-Class Mail and addressed in accordance with the instructions thereon.  In all other cases, a Proof of Claim and Release form shall be deemed to have been submitted when actually received by the Claims Administrator;

(c)    Each Proof of Claim and Release form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this Settlement Agreement the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to ¶5.10(e) below;

(d)    Proof of Claim and Release forms that do not meet the submission requirements may be rejected.  Prior to rejection of a Proof of Claim and Release form, the Claims Administrator shall communicate with the Class Member in order to remedy the curable deficiencies in the Proof of Claim and Release form submitted.  The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all Class Members whose Proof of

- 20 -

Claim and Release forms it proposes to reject in whole or in part, setting forth the reasons therefore, and shall indicate in such notice that the Class Member whose claim is to be rejected has the right to a review by the Court if the Class Member so desires and complies with the requirements of ¶5.10(e) below; and

(e)     If any Class Member whose claim has been rejected in whole or in part desires to contest such rejection, the Class Member must, within twenty (20) calendar days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Class Member's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

5.11     Each Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to the Class Member's claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Class Member's status as a Class Member and the validity and amount of the Class Member's claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of the Proof of Claim and Release forms.

5.12     Payment pursuant to this Settlement Agreement shall be deemed final and conclusive against all Class Members. All Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Judgment and the releases provided for therein, and will be barred from bringing any action against the Released Persons concerning the Released Claims.

- 21 -

5.13    If any funds remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be used: (a) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants or to pay any late, but otherwise valid and fully documented, claims received after the cut-off date used to make the initial distribution, provided that such distributions to any late post-distribution claimants meet all of the other criteria for inclusion in the initial distribution; (b) second, to pay any additional settlement administration fees and expenses, including those of Lead Counsel, as may be approved by the Court; and (c) finally, to make a second distribution to Authorized Claimants who cashed their checks from the initial distribution, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible. If after six (6) months following such second distribution, if undertaken, or if such second distribution is not undertaken, any funds remain in the Net Settlement Fund after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in this Settlement cash their checks, such funds shall be contributed to an Internal Revenue Code Section 501(c)(3) charity designated by Lead Counsel and unaffiliated with Defendants, Lead Plaintiffs or Lead Counsel.

5.14    This is not a claims-made settlement and, if all conditions of this Settlement Agreement are satisfied and the Effective Date occurs, no portion of the Settlement Fund will be returned to Person(s) that paid the Settlement Amount.

718797_3

5.15    The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Distribution, the determination, administration, or calculation of claims, the payment or withholding of Taxes, or any losses incurred in connection therewith.

5.16    Defendants shall take no position with respect to the Plan of Distribution or any other such plan as may be approved by the Court.

5.17    Any proposed Plan of Distribution of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Settlement Agreement, and Lead Counsel will ask the Court to consider any such proposed Plan of Distribution separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement.  Any order or proceeding relating to the Plan of Distribution shall not operate to terminate or cancel the Settlement Agreement or affect the finality of the Court's Judgment approving the Settlement Agreement and the Settlement set forth herein, or any other orders entered pursuant to the Settlement Agreement.  Class Members and Defendants shall be bound by the terms of this Settlement, irrespective of whether the Court disapproves or modifies the Plan of Distribution.

5.18    No Person shall have any claim against Lead Plaintiffs, Plaintiffs' Counsel, Defendants, or their respective counsel, or the Claims Administrator based on distributions made substantially in accordance with the Settlement, the Settlement Agreement, and the Plan of Distribution, or otherwise as further ordered by the Court.

**6.    Fee and Expense Application and Award**

6.1    Lead Counsel may submit an application or applications in accordance with the Notice Order (the "Fee and Expense Application") for distributions from the Settlement Fund for: (a)

- 23 -

an award of attorneys' fees to be paid out of the Settlement Fund; plus (b) actual expenses incurred in connection with prosecuting the Action, plus interest on both amounts; and (c) an award to the Lead Plaintiffs for their service to the Class.  Neither Lead Counsel nor any Class Member shall be entitled to terminate the Settlement Agreement if the Court disapproves of or modifies any application or request with respect to attorneys' fees or expenses or with respect to the way in which the Net Settlement Fund is distributed.

6.2     The attorneys' fees, expenses, and costs, including the fees of experts and consultants, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses.  This provision shall apply notwithstanding timely objections to, potential for appeal from, or collateral attack on the Settlement.  Lead Counsel shall thereafter allocate the attorneys' fees among other Plaintiffs' Counsel in a manner that Lead Counsel in good faith believes reflects the contributions of such counsel to the prosecution and settlement of the Action.  Defendants shall have no obligation to make any payment other than as provided for herein with respect to funding the Settlement Fund and shall have no responsibility with respect to the allocation of attorneys' fees, costs, and expenses amongst Plaintiffs' Counsel.  Any such awards shall be paid solely from the Settlement Fund.  In the event that the judgment or the order awarding such fees and expenses paid to Lead Counsel pursuant to ¶6.1 above is reversed or modified, or if the Settlement is cancelled or terminated for any reason, then Lead Counsel shall refund such fees, expenses, and/or costs to the Settlement Fund in an amount consistent with such reversal or modification, plus interest thereon at the same rate as earned on the Settlement Fund during that period, within twenty (20) business days from receiving notice from MBIA or from a court of competent jurisdiction.

- 24 -

6.3    The procedure for and the allowance or disallowance by the Court of the Fee and Expense Application, to be paid out of the Settlement Fund, are not part of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Settlement Agreement, or affect or delay the finality of the Judgment approving the Settlement Agreement and the Settlement of the Action.

6.4    Released Persons shall have no responsibility for any payment of attorneys' fees and expenses to Lead Counsel or any Class Member's counsel over and above payment of the Settlement Fund.

6.5    Released Persons shall have no responsibility for the allocation among Plaintiffs' Counsel, any Class Member's counsel, and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

**7.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1    The Effective Date of the Settlement Agreement shall be conditioned on the occurrence of all of the following events:

(a)    all of the Settling Parties have executed the Settlement Agreement and such other documents as may be required to obtain final Court approval of the Settlement Agreement in a form satisfactory to the Settling Parties;

(b)    MBIA or its designee(s), on behalf of Defendants, has deposited the Settlement Amount with the Escrow Agent;

(c)    MBIA, on behalf of Defendants, has not exercised its option to terminate the Settlement Agreement pursuant to ¶7.3 below;

(d)    the Court has entered the Notice Order;

- 25 -

718797_3

(e)      the Court has entered the Judgment; and

(f)      the Judgment has become Final.

7.2      Upon the occurrence of all of the events referenced in ¶7.1 above, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If all of the conditions specified in ¶7.1 are not met, then the Settlement Agreement shall be canceled and terminated subject to ¶7.4 below unless Lead Counsel and counsel for Defendants mutually agree in writing to proceed with the Settlement.

7.3      If prior to the Settlement Hearing any Persons who otherwise would be members of the Class have timely requested exclusion from the Class in accordance with the provisions of the Notice Order and the Notice given pursuant thereto, and such Class Members in the aggregate purchased or otherwise acquired a number of shares of MBIA common stock during the Class Period in an amount greater than the sum specified in a separate "Supplemental Agreement" executed by Lead Plaintiffs and Defendants, MBIA shall have, in its sole and absolute discretion, the option to terminate this Settlement Agreement and Settlement, on behalf of Defendants, in accordance with the terms of the Supplemental Agreement.  The Supplemental Agreement will not be filed with the Court unless the Court directs that it be filed, or a party to the Supplemental Agreement seeks the Court's resolution of a dispute concerning its interpretation or application.  Copies of all requests for exclusion received, together with copies of all written revocations of requests for exclusion, shall be delivered to Lead Counsel and Defendants' counsel by the Claims Administrator no later than seven (7) business days before the Settlement Hearing.  MBIA may terminate the Settlement Agreement and the Settlement by serving written notice of termination on the Court and Lead Counsel delivered by hand or email on or before three (3) business days before the Settlement Hearing.  In the event that MBIA serves a written notice of termination, MBIA may withdraw its written notice of

- 26 -

termination by providing written notice of such withdrawal to Lead Counsel and to the Court by no later than 5:00 p.m. Eastern Time on the day prior to the Settlement Hearing, or by such later date as shall be agreed upon in writing as between Lead Counsel and MBIA's counsel.

7.4    Unless otherwise ordered by the Court, in the event the Settlement Agreement shall terminate, or be canceled, or shall not become effective for any reason, within ten (10) business days after written notification of such event is sent by counsel for Defendants or Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest), less expenses which have either been incurred or disbursed for notice and administration costs pursuant to ¶2.1 or ¶2.6, shall be refunded to the entity that provided the funds. At the written direction of counsel for Defendants, the Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any expenses incurred in connection with such application(s) for refund.

7.5    In the event that the Settlement Agreement is not approved by the Court or the Settlement set forth in the Settlement Agreement is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Action as of May 9, 2012. In such event, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in this Action or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*, and the Settling Parties shall be deemed to return to their status as of May 9, 2012; provided, however, that ¶¶1.1 through 1.24, ¶¶2.4 through 2.7, ¶6.2, ¶¶7.4 through 7.7, ¶8.3 and ¶8.4 of the Settlement Agreement shall remain in full force and effect. An order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Distribution or the amount of any

- 27 -

attorneys' fees, costs, expenses, and interest awarded by the Court to Lead Counsel shall not constitute grounds for cancellation or termination of the Settlement Agreement. Notwithstanding any such modification of the terms of the Plan of Distribution or the Settlement Agreement with respect to attorneys' fees or expenses, Defendants shall be entitled to all benefits of the Settlement and shall not, under any circumstances, be called upon to contribute additional funds to the Settlement Fund.

7.6     MBIA and Lead Counsel each shall have the right to terminate the Settlement and this Settlement Agreement by providing written notice of its election to do so to all other Settling Parties hereto within sixty (60) days of: (a) the Court's entry of a Notice Order that the terminating party reasonably and in good faith determines is materially different from Exhibit A, attached hereto; (b) the Court's refusal to approve this Settlement Agreement or any part of it that the terminating party reasonably and in good faith determines is material; (c) the Court's entry of the Final Judgment and Order of Dismissal with Prejudice that the terminating party reasonably and in good faith determines is materially different from that provided in Exhibit B, attached hereto; or (d) the date upon which the Final Judgment and Order of Dismissal with Prejudice is modified or reversed by any court in any respect that the terminating party reasonably and in good faith determines is material. However, any decision with respect to an application for attorney's fees or with respect to any plan of distribution shall not be considered material to the Settlement, shall not affect the finality of the Final Judgment and Order of Dismissal with Prejudice, and shall not be grounds for termination.

7.7     Lead Counsel shall have the right to terminate the Settlement thirty (30) calendar days after MBIA's failure to comply with its obligation for the transfer of the Settlement Amount pursuant to ¶2.1 above. Such right may only be exercised up to forty (40) calendar days after MBIA's failure to comply.

- 28 -

**8.    Miscellaneous Provisions**

8.1    The Settling Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Settlement Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Settlement Agreement.

8.2    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action.  The Settlement shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties and their counsel agree that they shall not assert or allege in any action, proceeding, or claim that any party hereto violated Rule 11 of the Federal Rules of Civil Procedure, and the Final Judgment shall contain a finding that all Settling Parties and their counsel complied with the requirements of Rule 11 with respect to the institution, prosecution, defense, and resolution of the Action.  The Settling Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith by the Settling Parties with the assistance of an independent mediator and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum regarding the Action, including that the Action was brought or defended in bad faith or without a reasonable basis.

8.3    Neither the Settlement Agreement nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the Settlement (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Persons; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of

- 29 -

any of the Released Persons; or (c) is or may be deemed to be or may be used as an admission or evidence that any claims asserted by Lead Plaintiffs were not valid or that the amount recoverable was not greater than the Settlement Amount, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. The Released Persons may file the Settlement Agreement and/or the Judgment in any action that may be brought against them.

8.4    All of the Exhibits to the Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

8.5    All settlement-related discussions between the Settling Parties and their counsel, including discussions with the mediator, shall be confidential.

8.6    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.7    The Settlement Agreement, the Exhibits and the Supplemental Agreement constitute the entire agreement among the Settling Parties. No representations, warranties, or inducements have been made to any Settling Party concerning the Settlement Agreement, the Exhibits, or the Supplemental Agreement other than the representations, warranties, and covenants contained and memorialized in such documents.

8.8    Except as otherwise provided herein (or, as among Defendants, in any agreement between them), each Settling Party shall bear its own costs.

8.9    Lead Counsel represents that Lead Plaintiffs have expressly authorized Lead Counsel, on behalf of the Class, to take all appropriate action required or permitted to be taken by the Class pursuant to the Settlement Agreement to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Class which it deems appropriate.

- 30 -

718797_3

8.10    Lead Plaintiffs and Lead Counsel represent that none of the Lead Plaintiffs' claims or causes of action referred to in this Action or this Settlement Agreement has been assigned, encumbered, or in any manner transferred in whole or in part.

8.11    Each Person executing the Settlement Agreement or any of its Exhibits on behalf of any Settling Party represents that such Person has the full authority to do so.

8.12    The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

8.13    The Settlement Agreement shall be binding upon, and inure to the benefit of, the heirs, successors, and assigns of the Settling Parties hereto.

8.14    The Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

8.15    Pending approval of the Court of the Settlement Agreement and its Exhibits, all proceedings in this Action shall be stayed, and all members of the Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons.

8.16    This Settlement Agreement and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the substantive law of the State of New York without giving effect to that State's choice-of-law principles.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed by their duly authorized attorneys.

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN (SR-7957)
DAVID A. ROSENFELD (DR-7564)
MARIO ALBA JR. (MA-7240)

_____
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone: 631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

DeCARLO, CONNOR & SHANLEY
JOHN T. DeCARLO (070607)
DANIEL M. SHANLEY (169182)
533 South Fremont Avenue, 9th Floor
Los Angeles, CA 90071-1706
Telephone: 213/488-4100
213/488-4180 (fax)

Attorneys for Plaintiffs

MILBERG LLP
BARRY A. WEPRIN
One Pennsylvania Plaza
New York, NY  10119
Telephone: 212/594-5300
212/868-1229 (fax)

Additional Counsel for Lead Plaintiffs
- 32 -

718797_3

DEBEVOISE & PLIMPTON LLP
STEVEN KLUGMAN
DAVID GOPSTEIN

_____
STEVEN KLUGMAN

919 Third Avenue
New York, NY 10022
Telephone: 212/909-6000
212/909-6836 (fax)

Attorneys for Defendants MBIA Inc., Gary Dunton,
Neil G. Budnick, Joseph W. Brown, Douglas C.
Hamilton and Nicholas Ferreri

FRIEDMAN KAPLAN SEILER
 & ADELMAN LLP
LANCE J. GOTKO
JOHN N. ORSINI

_____
JOHN N. ORSINI

7 Times Square
New York, NY 10036
Telephone: 212/833-1100
212/833-1250 (fax)

Attorneys for Defendant Richard L. Weill

- 33 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 4, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 4, 2012.

s/ Samuel H. Rudman
SAMUEL H. RUDMAN

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail: srudman@rgrdlaw.com

718797_3

# Mailing Information for a Case 1:05-cv-03514-LLS

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@rgrdlaw.com,e_file_ny@rgrdlaw.com,drosenfeld@rgrdlaw.com

- **Lance James Gotko**
  lgotko@fklaw.com,vgarvey@fklaw.com,jshaw@fklaw.com

- **Fran Marcia Jacobs**
  fmjacobs@duanemorris.com

- **Steven Klugman**
  sklugman@debevoise.com

- **William H. Narwold**
  bnarwold@motleyrice.com,imoll@motleyrice.com,vlepine@motleyrice.com,kweil@motleyrice.com,ajanelle@motleyrice.com

- **John Nicholas Orsini**
  jorsini@fklaw.com

- **Steven Robert Peikin**
  peikins@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Peter Edward Seidman**
  pseidman@milberg.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Anthony Capone
'