UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | x | |
| In re MBIA INC. SECURITIES LITIGATION | : | Civil Action No. 05-cv-03514-LLS |
| | : | |
| | : | CLASS ACTION |
| This Document Relates To: | : | |
| | : | LEAD PLAINTIFFS' MEMORANDUM OF |
| ALL ACTIONS. | : | LAW IN SUPPORT OF UNOPPOSED |
| | x | MOTION FOR FINAL APPROVAL OF |
| | | SETTLEMENT AND PLAN OF |
| | | DISTRIBUTION OF SETTLEMENT |
| | | PROCEEDS |

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT .................................................................................1

II. HISTORY AND BACKGROUND OF THE ACTION .......................................3

III. THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS...................................................................................3

IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT..................................5

    A. The Law Favors and Encourages Settlements .........................................5

    B. The Settlement Is Procedurally Fair ......................................................7

    C. The Second Circuit's Standards Governing the Substantive Fairness of Class Action Settlements .................................................8

    D. The Settlement Satisfies the Second Circuit Criteria for Approval ......................9

        1. The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement .................................................9

        2. The Reaction of the Class to the Settlement ...............................11

        3. The Stage of the Proceedings and Discovery Completed.........................11

        4. The Risks of Continued Litigation...........................................13

            a. Defendants' Liability Defenses......................................14

            b. The Considerable Risk of Establishing Damages.........................15

        5. The Risks of Maintaining the Class Action Through Trial.......................17

        6. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.......................................17

        7. The Ability of the Defendants to Withstand a Greater Judgment.............18

V. THE PLAN OF DISTRIBUTION OF THE NET SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT .................19

VI. CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)..................................................................................................17

*Beecher v. Able*,
575 F.2d 1010 (2d Cir. 1978).................................................................................19

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
No. 07 Civ. 2207 (JGK), 2010 WL 3119374
(S.D.N.Y. Aug. 6, 2010) ...............................................................................5, 8, 13, 17

*Carpe v. Aquila, Inc.*,
No. 02-0388-CV-W-FJG, 2005 WL 1138833
(W.D. Mo. Mar. 23, 2005).......................................................................................16

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)..................................................................................7, 12

*DeJulius v. New Eng. Health Care Emps. Pension Fund*,
429 F.3d 935 (10th Cir. 2005) ...................................................................................3

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)............................................................................... *passim*

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976)................................................................................................14

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071 (RJH), 2005 WL 2757792
(S.D.N.Y. Oct. 24, 2005) ........................................................................................10

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987).......................................................................17

*In re Alloy, Inc. Sec. Litig.*,
No. 03 Civ. 1597 (WHP), 2004 WL 2750089
(S.D.N.Y. Dec. 2, 2004)............................................................................................7

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................13, 19

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
No. MDL 1500, 2006 WL 903236
(S.D.N.Y. Apr. 6, 2006) ................................................................................14

*In re Ashanti Goldfields Sec. Litig.*,
No. CV-00-717 (DGT), 2005 WL 3050284
(E.D.N.Y. Nov. 15, 2005) ..............................................................................6

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................12, 13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)...........................................................................17

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240 (CM), 2007 WL 2230177
(S.D.N.Y. July 27, 2007) ..............................................................................13

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) .....................................................................5

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................8, 12, 20

*In re Holocaust Victim Assets Litig.*,
413 F.3d 183 (2d Cir. 2001)...........................................................................20

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .....................................................................3

*In re Indep. Energy Holdings PLC*,
No. 00 Civ. 6689 (SAS), 2003 WL 22244676
(S.D.N.Y. Sept. 29, 2003) .............................................................................18

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ..........................................................6, 7, 8, 11

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
No. 02 MDL 1484 (JFK), 2007 WL 4526593
(S.D.N.Y. Dec. 20, 2007)................................................................................8

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) .....................................................................5

- iii -

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 46 (S.D.N.Y. 1993) ...................................................................................13

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................................17

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.),
  *aff'd*, 117 F.3d 721 (2d Cir. 1997) ..................................................................... *passim*

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  No. 06 Civ. 5173(RPP), 2008 WL 1956267
  (S.D.N.Y. May 1, 2008) .............................................................................10, 12, 19

*In re Time Warner Sec. Litig.*,
  9 F.3d 259 (2d Cir. 1993) .............................................................................................14

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 0165(CM), 2007 WL 4115809
  (S.D.N.Y. Nov. 7, 2007) ................................................................................. *passim*

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom.*
  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...........................................................................................19

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) .........................................................................................18

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985),
  *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...............................................................................16

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..........................................................................19

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) ...........................................................................................5

*Kaufman v. Motorola, Inc.*,
  No. 95 C 1069, 2000 WL 1506892
  (N.D. Ill. Sept. 21, 2000) ..............................................................................................16

*Lewis v. Newman*,
  59 F.R.D. 525 (S.D.N.Y. 1973) .......................................................................14

*Madden v. Deloitte & Touche, LLP*,
  118 Fed. Appx. 150 (9th Cir. 2004) ................................................................15

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................13, 19, 20

*Milstein v. Huck*,
  600 F. Supp. 254 (E.D.N.Y. 1984) ....................................................................9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ...........................................................................................3

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) .....................................................................6, 7, 18

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ............................................................................14

*Plummer v. Chem. Bank*,
  668 F.2d 654 (2d Cir. 1982) ............................................................................12

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...........................................................9, 10

*Taft v. Ackermans*,
  No. 02 Civ. 7951(PKL), 2007 WL 414493
  (S.D.N.Y. Jan. 31, 2007) ...................................................................................6

*Thompson v. Metro. Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) .........................................................................4

*TSC Indus. v. Northway, Inc.*,
  426 U.S. 438 (1976) .........................................................................................15

*Uhl v. Thoroughbred Tech. & Telecomms. Inc.*,
  No. IP 00-1232-C B/S, 2001 U.S. Dist. LEXIS 13115
  (S.D. Ind. Aug. 28, 2001), *aff'd*, 309 F.3d 978 (7th Cir. 2002) ......................3

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...........................................................................5, 18

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)..................................................................6

*Whalen v. Hibernia Foods PLC*,
No. 04 Civ. 3182, 2005 WL 1799370
(S.D.N.Y. Aug. 1, 2005) ...................................................................14

*Wright v. Stern*,
553 F. Supp. 2d 337 (S.D.N.Y. 2008).............................................5, 6

*Zerkle v. Cleveland-Cliffs Iron Co.*,
52 F.R.D. 151 (S.D.N.Y. 1971) ........................................................14

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
Rule 23 ..............................................................................................3, 5
Rule 23(b)(3)......................................................................................1, 3
Rule 23(c)(2)(B)....................................................................................3
Rule 23(e).......................................................................................1, 3, 5
Rule 23(e)(1).........................................................................................3

## SECONDARY AUTHORITIES

4 Alba Conte, Herbert B. Newberg,
*Newberg on Class Actions* (4th ed. 2002)
§11.45................................................................................................12

U.S. Const. Amend. 5 ..............................................................................3

Pursuant to Rules 23(b)(3) and (e) of the Federal Rules of Civil Procedure, Lead Plaintiffs Southwest Carpenters Pension Trust and the City of Pontiac General Employees' Retirement System ("Lead Plaintiffs"), by and through their counsel ("Lead Counsel"), respectfully move this Court for an order finally approving the proposed settlement (the "Settlement") of the above-captioned class action (the "Action"), and approving the proposed plan for distributing the settlement proceeds to the Class (the "Plan of Distribution").[1]

## I. PRELIMINARY STATEMENT

Under the terms of the proposed Settlement, as set forth in the Stipulation, $3,750,000 in cash (the "Settlement Amount") was paid into an interest-bearing escrow account on behalf of the Class, in exchange for the dismissal of all claims brought against the Defendants in this Action and a full release of claims. The Settlement Fund (the Settlement Amount plus all interest earned thereon) will be used for the payment of taxes, notice and administrative costs, and for Court-awarded attorneys' fees and expenses. The cash remainder after these expenditures, the "Net Settlement Fund," will be distributed to Class Members who are not otherwise excluded from the Class and who timely submit valid Proof of Claim and Release forms to the Claims Administrator ("Authorized Claimants"). Each Authorized Claimant shall be allocated a percentage of the Net Settlement Fund based upon the relationship that each Authorized Claimant's claim bears to the total of all Authorized Claimants' claims, as explained in the Notice of Pendency of Proposed Settlement of Class Action (the "Notice").

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Settlement Agreement dated August 24, 2012 (the "Stipulation").

Lead Counsel respectfully submit that this Settlement is a very good recovery for the Class in light of the specific circumstances of the Action, and given the serious obstacles to recovery should litigation have continued. With the support of Lead Plaintiffs, this Settlement was reached by Lead Counsel as a result of their creative litigation efforts – and only after seven years of litigation and two successful appeals to the United States Court of Appeals for the Second Circuit. When viewed in light of the very real risk that Lead Plaintiffs would not prevail on motion to dismiss, class certification, summary judgment or at trial, the Settlement is a very good result for the Class. The Settlement also saves the Class the considerable expense and delay posed by continued litigation, especially here, as this Action has already been pending for over seven years, and extensive fact and expert discovery would have to occur before summary judgment or trial on the merits. As fully discussed below and in the accompanying Declaration of Samuel H. Rudman in Support of Lead Plaintiffs' Unopposed Motion for Final Approval of Settlement and Plan of Distribution of Settlement Proceeds, and an Award of Attorneys' Fees and Expenses (the "Rudman Decl."), the significant risks involved in taking this case further in litigation, and possibly on to trial, when measured against the benefit of the Settlement, support the Court's final approval of this Settlement.

Lead Counsel have assessed the strengths and weaknesses of the claims and defenses asserted, and the considerable risk and delay associated with continued litigation and trial. Based on their assessment, Lead Plaintiffs and Lead Counsel believe that the Settlement is eminently fair, reasonable and adequate, and provides a substantial result for the Class. Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of this Settlement. Additionally, the Plan of Distribution, which was developed with the assistance of Lead Plaintiffs' damages consultant, is a fair and reasonable method for distributing the Net Settlement Fund to Class Members, and should also be approved by the Court.

## II.     HISTORY AND BACKGROUND OF THE ACTION

The Court is respectfully referred to the accompanying Rudman Declaration for a full discussion of, *inter alia*, the factual background and procedural history of the Action, the litigation efforts of Lead Plaintiffs and Lead Counsel, the significant risks of continued litigation, and a discussion of the negotiations leading to this Settlement.

## III.    THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE
PROCESS REQUIREMENTS

Pursuant to Rule 23(e), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "In addition to the requirements of Rule 23, the constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement." *DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005) (citing U.S. Const. Amend. 5); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 185-86 (S.D.N.Y. 2012) (concluding notice of settlement satisfied Rule 23, due process, and the PSLRA). Generally, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A notice of settlement satisfies due process when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The law requires "'adequate notice,' not perfect notice." *Uhl v. Thoroughbred Tech. & Telecomms. Inc.*, No. IP 00-1232-C B/S, 2001 U.S. Dist. LEXIS 13115, at *63 (S.D. Ind. Aug. 28, 2001), *aff'd*, 309 F.3d 978 (7th Cir. 2002).

Here, the Notice, in plain easily understood language, advises Class Members of the essential terms of the Settlement, sets forth the procedure and deadline for submitting objections and requests

- 3 -

for exclusion to the Settlement, who to contact for additional information, and provides specifics regarding the date, time, and place of the Settlement Hearing. *See Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 68 (S.D.N.Y. 2003). The Notice also contains information regarding Lead Counsel's fee and expense application and the Plan of Distribution. Thus, the Notice provides the necessary information for Class Members to make an informed decision regarding the Settlement and their rights with respect to it.

In the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (Dkt. No. 110), the Court approved Lead Plaintiffs' proposed plan for notifying Class Members about the proposed Settlement and Plan of Distribution of settlement proceeds. Preliminary Approval Order, ¶¶5-6. Lead Plaintiffs have now satisfied all of the elements of the notice plan approved by the Court. The Claims Administrator mailed individual copies of the Notice and Proof of Claim and Release form to all potential Class Members who could be identified with reasonable effort. *See* ¶¶3-10 to the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Pendency of Proposed Settlement of Class Action and the Proof of Claim and Release Form, B) Publication of the Summary Notice, and C) Internet Posting ("Sylvester Decl.") (Dkt. No. 113) and ¶3 to the accompanying Supplemental Declaration of Carole K. Sylvester Regarding Mailing of the Notice of Pendency of Proposed Settlement of Class Action and the Proof of Claim and Release Form ("Supp. Sylvester Decl."). The Claims Administrator also used diligent efforts to give notice to nominee purchasers (such as brokerage firms and banks) who purchased MBIA shares during the Class Period as record owners but not beneficial owners, and the Claims Administrator also mailed out additional copies of the Notice to potential Class Members and their nominees in response to requests from those nominees. Sylvester Decl., ¶¶4, 7-9. As of November 13, 2012, the Claims Administrator had mailed a total of 79,451 copies of the Notice and Proof of Claim and Release

form to potential Class Members and their nominees. Supp. Sylvester Decl., ¶3. Further, a Summary Notice was published in the national edition of *Investor's Business Daily* and was transmitted over the *Business Wire* on September 28, 2012. Sylvester Decl., ¶13. All of these steps were undertaken within the timeframe set forth in the Preliminary Approval Order. In addition, the Notice, Proof of Claim and Release form, Stipulation, and Preliminary Approval Order were placed on the Claims Administrator's website. *Id.*, ¶12.

Lead Plaintiffs respectfully submit that the notice program implemented in this Action constitutes the best notice practicable under the circumstances and satisfies the requirements of due process and Federal Rule of Civil Procedure 23. *See, e.g.*, *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 WL 3119374, at *2 (S.D.N.Y. Aug. 6, 2010) (measures taken by the claims administrator in mailing the notices were adequate to inform the members of the class and sufficient to satisfy the requirements of Rule 23 and due process).

## IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.    The Law Favors and Encourages Settlements

Rule 23(e) requires that the settlement of a class action be approved by the court. A court may approve a settlement that is binding on the class only if it determines that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000); *Bellifemine*, 2010 WL 3119374, at *2. *See also In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160-63 (S.D.N.Y. 2011) (granting final approval where class action settlement was procedurally and substantively fair). This evaluation requires a court to consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 165

(S.D.N.Y. 2007). While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially with respect to class actions. *Wright*, 553 F. Supp. 2d at 344; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165(CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007); *In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717 (DGT), 2005 WL 3050284, at *1 (E.D.N.Y. Nov. 15, 2005); *Taft v. Ackermans*, No. 02 Civ. 7951(PKL), 2007 WL 414493, at *4 (S.D.N.Y. Jan. 31, 2007). *See also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (the settlement of complex class action litigations are clearly favored by the courts). Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger*, 698 F.2d at 73 ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *Veeco*, 2007 WL 4115809, at *5. As stated by the court in *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972),

> the role of a court in passing upon the propriety of the settlement of a derivative or other class action is a delicate one. . . . [W]e recognized that since "'the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation,' the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial.'"

*Id.* at 691-92.[2]

## B.    The Settlement Is Procedurally Fair

A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *Luxottica Grp.*, 233 F.R.D. at 315; *see also In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at *1-*2 (S.D.N.Y. Dec. 2, 2004). A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations and [where] plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations, and following a mediation presided over by Jed Melnick, who has extensive experience mediating complex litigations and securities actions. In addition, no question exists that Lead Counsel, equipped with knowledge from an extensive investigation and evaluation of Lead Plaintiffs' claims, including the briefing on Defendants' multiple motions to dismiss and briefing on Lead Plaintiffs' multiple appeals to the United States Court of Appeals for the Second Circuit, were fully informed of the merits and weaknesses of the case by the time the Settlement was agreed to. Thus, little doubt exists

---

[2]    Citations are omitted and emphasis is added unless otherwise noted.

that this Settlement is entitled to the presumption of procedural fairness dictated by Second Circuit

law.

### C. The Second Circuit's Standards Governing the Substantive Fairness of Class Action Settlements

As stated above, courts within the Second Circuit observe the universal standard for

determining whether a proposed class settlement is substantively fair: Whether the proposed

settlement is "'fair, reasonable, and adequate.'" *Luxottica Grp.*, 233 F.R.D. at 310. The Second

Circuit has identified nine factors that courts should consider in deciding whether to approve a

proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. All nine factors need not be satisfied. Instead, the court should look at

the totality of these factors in light of the specific circumstances involved. *Bellifemine*, 2010 WL

3119374, at *2; *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484

(JFK), 2007 WL 4526593, at *9-*10 (S.D.N.Y. Dec. 20, 2007); *In re Global Crossing Sec. & ERISA

Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

As demonstrated below, the Settlement satisfies each of the relevant criteria set forth above.

Indeed, this Settlement represents an excellent recovery for the Class under the circumstances, and,

in the judgment of Lead Counsel, there is serious doubt that a more favorable result was possible

following further litigation. As such, the Settlement clearly warrants this Court's final approval.

788220_1

**D.    The Settlement Satisfies the Second Circuit Criteria for Approval**

**1.    The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement**

"The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'[I]t is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.'"). Here, the securities claims advanced by Lead Plaintiffs involve complex financial issues surrounding two MBIA restatements. Rudman Decl., ¶¶15-23. The first restatement, issued by MBIA on March 8, 2005, affected a period of six years – or 24 reporting periods from 1998-2003 – of incorrect financial information that MBIA provided to its investors. *Id.*, ¶19. The restatement was unusually complex, and affected many of the income-statement and balance-sheet line items the Company had reported for the previous six years. *Id.* Among other financial metrics, MBIA had materially misstated its net income, earnings per share, and operating expenses. *Id.* In November 2005, however, MBIA again announced that it was restating its financial statements for an eight-year period from 1998-2004. *Id.*, ¶22. MBIA's second restatement again affected its net income, earnings per share, and operating expenses. *Id.*

The legal issues in this Action – proving the duty to disclose, scienter, materiality, and damages – are equally complex. If Lead Plaintiffs had successfully opposed Defendants' motion to dismiss, extensive and complex merits and expert discovery and testimony would be required. Further, significant judicial resources would be expended on deciding a motion for class certification, discovery disputes, competing motions for summary judgment, and conducting a trial, which can be very complicated for jurors and would be expensive for the Class. *See Strougo*, 258 F. Supp. 2d at 261 ("Moreover, even if a shareholder or class member was willing to assume all the

risks of pursuing the actions through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals and possible changes in the law and would, in light of the time value of money, make future recoveries less valuable than this current recovery.").

There can be no doubt that because this Action is settling against the Defendants at this time, the litigants have been spared the delay and expense of continued litigation and the risk of losing at summary judgment or at trial. Many hours of the Court's time and resources have also been spared. This Action has already been pending for over seven years. Moreover, even if the Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, further reducing its value. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173(RPP), 2008 WL 1956267, at \*6 (S.D.N.Y. May 1, 2008) ("*Sony*"); *Strougo*, 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at \*6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Indeed, when weighed against the real possibility of recovering nothing for the Class, the $3.75 million Settlement at this juncture represents a very good result for the Class based on the circumstances. Further, the Settlement results in an immediate and substantial tangible recovery without the considerable risk, expense, and delay of proceeding with deposition and expert discovery and trial. Lead Counsel submit that the Court should find that this factor weighs heavily in favor of the proposed Settlement.

## 2. The Reaction of the Class to the Settlement

The reaction of the class to a settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126; *see also Luxottica Grp.*, 233 F.R.D. at 311-12. In fact, one court has noted that the reaction of the class to a settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *Veeco*, 2007 WL 4115809, at *7. Notice regarding the Settlement has been mailed to over 79,000 potential Class Members, and has been otherwise widely distributed. *See* Supp. Sylvester Decl., ¶3 and Sylvester Decl., ¶¶12-13. The deadline for Class Members to request exclusion from the Settlement was November 3, 2012, and the deadline for Class Members to object to the Settlement was November 5, 2012. In response to the Notice sent to Class Members, however, not a single objection and only one exclusion was received.[3] This is significant, as the Class contains numerous large shareholders with the incentive to object if they thought it was necessary to do so.[4] In addition, Lead Plaintiffs have participated throughout the prosecution of the litigation, and were involved in the decision to enter into the Settlement with Defendants. Accordingly, this factor strongly supports final approval of the Settlement.

## 3. The Stage of the Proceedings and Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess

---

[3] The lone exclusion is from Jenus G. Long, who is now deceased. The power of attorney for Mr. Long's trust requested that his trust be excluded from the Settlement because the trust no longer exists.

[4] If any untimely objections or exclusions are received, they will be addressed by Lead Counsel in reply briefing to be filed with the Court on or before December 10, 2012.

788220_1

evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . . At minimum, the court must possess sufficient information to raise its decision above mere conjecture." 4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45, at 127, 128 (4th ed. 2002). As previously noted, "[f]ormal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *Global Crossing*, 225 F.R.D. at 458. *See also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (not necessary for court to find parties engaged in extensive discovery; must merely find that they engaged in sufficient investigation to enable court to make intelligent appraisal of case) (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *Veeco*, 2007 WL 4115809, at *7 ("the parties need not have engaged in full discovery for a settlement to be approved as fair"); *Sony*, 2008 WL 1956267, at *7 (same).[5]

Here, Lead Counsel negotiated a substantial settlement only after conducting an extensive factual investigation and analysis relating to the events and transactions alleged in the initial complaint, the First Complaint and the Second Complaint. Rudman Decl., ¶¶5-9. Despite the PSLRA-mandated discovery stay that was in place, Lead Counsel had a great deal of information available to them when the Settlement was reached. Specifically, Lead Counsel reviewed scores of publicly available documents, as well as MBIA's regulatory SEC filings, periodic reports, statements of additional information, press releases, and other publicly-available information to gain a full and complete understanding of MBIA's business. Rudman Decl., ¶5. Lead Counsel also retained investigators to identify, locate and interview percipient witnesses, thoroughly researched the

---

[5]    In fact, in cases such as this one brought under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), no formal discovery may proceed until the motion to dismiss is denied.

applicable law with respect to Lead Plaintiffs' claims and the Defendants' potential defenses, and consulted with economists who provided advice and assistance on issues relating to market efficiency, damages, and materiality. Rudman Decl., ¶¶5-9. Moreover, Lead Counsel fully briefed Defendants' motions to dismiss the First Complaint and Second Complaint and their respective appeal before the Second Circuit. *Id.*, ¶8. The parties were also in the process of briefing the third motion to dismiss when they reached an agreement-in-principle. The parties also participated in a mediation before a mediator experienced in complex securities litigation, Jed Melnick. *Id.*, ¶¶33-35. Thus, Lead Counsel had a clear picture of the strengths and weaknesses of this case and of the legal and factual defenses that Defendants would likely raise at summary judgment and at trial. *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *6 (S.D.N.Y. July 27, 2007); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). As such, Lead Counsel had sufficient information to intelligently negotiate the terms of the Settlement that is before the Court for approval. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001). Therefore, this Court should find that this factor also supports the Settlement.

### 4.    The Risks of Continued Litigation

In assessing a settlement, a court should balance the benefits afforded the class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *Bellifemine*, 2010 WL 3119374, at *4; *Veeco*, 2007 WL 4115809, at *8; *Austrian & German Bank*, 80 F. Supp. 2d at 177. While Lead Counsel believe that Lead Plaintiffs would be successful defending another motion to dismiss and summary judgment, and succeeding at trial, it is also clear that ultimate success is not assured, and this Settlement, when viewed in light of the risks of proving liability, is undoubtedly fair, adequate, and reasonable. *See In re Michael Milken &*

- 13 -

*Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971) ("Stockholder litigation is notably difficult and unpredictable.").

Lead Plaintiffs faced numerous hurdles to establishing liability. This Action involves claims for relief under the Securities Exchange Act of 1934. To prevail on their claims, Lead Plaintiffs must demonstrate that Defendants made misstatements or omissions of material fact with scienter in connection with the sale or purchase of securities – that Defendants intentionally engaged in this conduct for the purpose of misleading investors. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).[6] Based on the defenses that Defendants have raised, most specifically with respect to scienter and materiality, and which they would continue to press through trial, Lead Counsel recognize that establishing liability at trial was not guaranteed. *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("[t]he difficulty of establishing liability is a common risk of securities litigation").

### a. Defendants' Liability Defenses

Lead Plaintiffs faced significant risks in proving that the alleged misstatements were materially false or misleading. *See In re Time Warner Sec. Litig.*, 9 F.3d 259, 264 (2d Cir. 1993) (to

---

[6]    Proof of scienter can be established: "'(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Whalen v. Hibernia Foods PLC*, No. 04 Civ. 3182, 2005 WL 1799370, at *2 (S.D.N.Y. Aug. 1, 2005). Although recklessness has been held to satisfy the scienter requirement, *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000), this too is a difficult standard.

prove materiality, plaintiffs have the burden of demonstrating defendants' misrepresentations and omissions were materially false or misleading when made); *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). In Defendants' third motion to dismiss, Defendants continued to make a host of arguments that purportedly support dismissal of the Second Complaint. Rudman Decl., ¶49. For one, while Defendants have abandoned their limitations defense, Defendants instead contend that the Action should be dismissed under the applicable statute of repose, arguing that the statute began to run not upon plaintiffs' purchase of their stock, but upon Defendants' earlier misrepresentations. *Id*. Second, in an effort to soften the magnitude of their two restatements, and thereby bolster their materiality argument, Defendants repeatedly give misleading percentage values to quantify their misstatements of MBIA's net earnings per share and operating expenses for 1998 through 2003. *Id*. Third, in another materiality argument, Defendants argue that no reasonable Class Period investor would have cared about fraudulent conduct that occurred "five years earlier," in 1998. *Id*. Fourth, Defendants contend that Lead Plaintiffs have not adequately alleged scienter. *Id*. By the time the parties agreed to the proposed Settlement, Lead Counsel had come to the conclusion that the defenses raised by Defendants could have certain jury appeal, and would render the inherently difficult burden of proving all of the elements of Lead Plaintiffs' claims as to all of the Defendants even more difficult.

**b.    The Considerable Risk of Establishing Damages**

Even if they successfully established liability, Lead Plaintiffs also faced substantial risk in establishing that the Class was damaged by Defendants' alleged misrepresentations or omissions. If the litigation continued, Defendants would likely have asserted that the stock drop at issue was caused, at least in part, by unrelated events, rather than any alleged misrepresentations or omissions of material fact concerning MBIA. *See, e.g.*, *Madden v. Deloitte & Touche, LLP*, 118 Fed. Appx.

- 15 -

150, 154 (9th Cir. 2004) (upholding a summary judgment decision in favor of defendants due to undisputed evidence establishing a loss-causation defense). Defendants contend that Lead Plaintiffs' loss causation allegations are inadequate because, among other things, the stock drop accompanying MBIA's March 30, 2005 announcement – that the Company had received additional subpoenas – was purportedly unrelated to the revelation that the 1998 AHERF transactions were fraudulent. Rudman Decl., ¶49.

The presentation of damages is a complex matter which would require the presentation of expert testimony. As a result, Lead Counsel already know that the Class will ultimately face a "battle of experts" – a battle in which no party is ever assured to prevail, and a battle which already arose at the class certification stage. While Lead Counsel believe that reliable and convincing expert testimony can be provided on the damages question, and that a judgment could ultimately be obtained for the full amount of damages available under the law, meaningful obstacles remain. First, the Court must determine that Lead Plaintiffs' damages model is admissible - and only then may a jury determine whether Lead Plaintiffs' or Defendants' model is more accurate. The Class is by no means assured of a ruling in its favor. *See, e.g.*, *Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG, 2005 WL 1138833, at *2-*4 (W.D. Mo. Mar. 23, 2005) (granting defendants' motion to exclude plaintiffs' expert testimony); *Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 WL 1506892, at *2 (N.D. Ill. Sept. 21, 2000) (precluding in part plaintiffs' expert testimony). It is then possible that, in the unavoidable "battle of experts," a jury might disagree with the Class's expert, or merely find Defendants' expert more persuasive.[7] As a result of the aforementioned considerations, the

---

[7]     *See, e.g.*, *PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of damages experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony

likelihood of proving damages, even assuming the Class prevailed on the liability issue, is somewhat difficult. *See Veeco*, 2007 WL 4115809, at *9. As a result, this factor also weighs in favor of the Settlement.

### 5. The Risks of Maintaining the Class Action Through Trial

The parties had yet to commence class certification briefing, and it was far from given that the Court would certify Lead Plaintiffs' proposed class. Further, even if the Court would decide to certify Lead Plaintiffs' proposed class, there would be no assurance of maintaining class status, since a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. *Bellifemine*, 2010 WL 3119374, at *4; *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476-77 (S.D.N.Y. 1998). Absent settlement, Defendants would likely seek to have the class decertified. Particularly, Defendants could potentially argue that a trial in this Action, if tried as a class action, would present "intractable management problems," a possibility which is wholly avoided by the Settlement. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). Because the Settlement avoids any uncertainty with respect to these issues, this factor weighs in favor of the Court finally approving the Settlement.

### 6. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762

---

would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*, 798 F.2d 35 (2d Cir. 1986). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").

(E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Veeco*, 2007 WL 4115809, at *11. The court need only determine whether the settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130; *Newman*, 464 F.2d at 693 ("[I]n any case there is a range of reasonableness with respect to a settlement."). *See also In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before jury result in full amount of damages claimed). The Second Circuit has described the "'range of reasonableness'" as "'a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in . . . any litigation.'" *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman*, 464 F.2d at 693). This $3.75 million recovery, when viewed in light of the risks present, falls within the range of reasonableness.

Moreover, in reaching the Settlement, Lead Counsel placed particular emphasis on: (i) the risks of continued prosecution of the Action; (ii) the defenses to liability and causation that Defendants would likely assert at summary judgment and trial; and (iii) the time and expense which would be required to prosecute the Action through trial. In light of the foregoing, the Settlement provides a good recovery for the Class and falls well within the range of possible recovery considered fair, reasonable, and adequate.

### 7.    The Ability of the Defendants to Withstand a Greater Judgment

The court may also consider the defendants' ability to withstand a judgment greater than that secured by settlement. *Grinnell*, 495 F.2d at 463. The fact that MBIA could have paid more money does not render the Settlement unreasonable, however. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that [the defendant] could afford to pay more does not

- 18 -

mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *Sony*, 2008 WL 1956267, at *8 ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate"). "Where, as here, the other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair." *Sony*, 2008 WL 1956267, at *8.

Accordingly, Lead Plaintiffs and Lead Counsel respectfully submit that this Court should find that the *Grinnell* factors, taken together, weigh in favor of the Settlement and that the Settlement warrants final approval by the Court.

## V. THE PLAN OF DISTRIBUTION OF THE NET SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

The standard for approval of a plan of allocation or distribution is the same as the standard for approving the settlement as a whole: "'namely, it must be fair and adequate.'" *Maley*, 186 F. Supp. 2d at 367; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005). "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005). A plan of distribution "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *Am. Bank Note*, 127 F. Supp. 2d at 429-30; *see also WorldCom*, 388 F. Supp. 2d at 344 (same). Further, courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

788220_1

The Plan of Distribution, which was fully described in the Notice, has a rational basis and was formulated by Lead Counsel, in consultation with Lead Plaintiffs' damages consultant, ensuring its fairness and reliability. *See Veeco*, 2007 WL 4115809, at *13. Under the proposed Plan of Distribution, each Authorized Claimant (as defined in the Stipulation at §IV, ¶1.1) will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, the settlement consideration less taxes, approved costs, fees, and expenses), with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.

The Plan of Distribution takes into account when Class Members purchased their MBIA common shares and when and whether Class Members sold such shares. Accordingly, some shareholders may benefit more from the Settlement than others depending upon when they made their transactions. This is fair and reasonable, as there is no rule that a settlement benefit all class members equally. *Veeco*, 2007 WL 4115809, at *13; *Global Crossing*, 225 F.R.D. at 462. Indeed, it is appropriate for interclass distributions to be based upon, among other things, the timing of purchases of the securities at issue. *See In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001). Otherwise, certain class members may receive an inequitable windfall, to the detriment of others. *PaineWebber*, 171 F.R.D. at 133.

Lead Counsel believe that the Plan of Distribution is fair and reasonable, and respectfully submit that it should be approved by the Court. It should be noted that no objections to the Plan of Distribution were filed, which also supports approval by the Court. *See Veeco*, 2007 WL 4115809, at *14; *Maley*, 186 F. Supp. 2d at 367.

## VI.    CONCLUSION

The Settlement reached in this Action is a very good result under the circumstances present here. For the foregoing reasons, the $3.75 million all-cash Settlement and Plan of Distribution of the

settlement proceeds are fair, reasonable and adequate, and should be granted the Court's final approval.

DATED:  November 19, 2012          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.


              s/ Samuel H. Rudman
_____
            SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
malba@rgrdlaw.com

Lead Counsel for Plaintiffs

DeCARLO, CONNOR & SHANLEY
JOHN T. DeCARLO
DANIEL M. SHANLEY
533 South Fremont Avenue, 9th Floor
Los Angeles, CA 90071-1706
Telephone: 213/488-4100
213/488-4180 (fax)

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 19, 2012.

s/ Samuel H. Rudman
SAMUEL H. RUDMAN

ROBBINS GELLER RUDMAN
& DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail: srudman@rgrdlaw.com

# Mailing Information for a Case 1:05-cv-03514-LLS

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@rgrdlaw.com,e_file_ny@rgrdlaw.com,drosenfeld@rgrdlaw.com

- **Lance James Gotko**
  lgotko@fklaw.com,vgarvey@fklaw.com,jshaw@fklaw.com

- **Fran Marcia Jacobs**
  fmjacobs@duanemorris.com

- **Steven Klugman**
  sklugman@debevoise.com

- **William H. Narwold**
  bnarwold@motleyrice.com,imoll@motleyrice.com,vlepine@motleyrice.com,kweil@motleyrice.com,ajanelle@motleyrice.com

- **John Nicholas Orsini**
  jorsini@fklaw.com

- **Steven Robert Peikin**
  peikins@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Peter Edward Seidman**
  pseidman@milberg.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Anthony Capone
,